1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   WALTER HOWARD WHITE,                    No.  2:12-cv-2868 MCE AC P

12                  Plaintiff,

13        v.                                 FINDINGS AND RECOMMENDATIONS

14   D. SMYERS, et al.,

15                  Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with this civil rights

18   action filed pursuant to 42 U.S.C. § 1983.  This proceeding was referred to this court by Local

19   Rule 302 pursuant to 28 U.S.C. § 636(b)(1).  Currently pending before the court is plaintiff's

20   motion for a temporary restraining order filed on June 2, 2014.  ECF No. 39.

21   I.    First Amended Complaint

22        In his first amended complaint, plaintiff alleged that various medical staff at High Desert

23   State Prison ("HDSP") were deliberately indifferent to his serious medical needs while he was

24   housed there between September 22, 2010 and March 27, 2013.  ECF No. 23 at 2.  Plaintiff

25   required ongoing medical treatment for a spinal condition, a Baker's cyst on his right knee, as

26   well as an additional surgery to repair a total knee replacement that had previously been done

27   without success.  ECF No. 23 at 3-4.

28        This court also found that the first amended complaint stated a colorable claim for a

1   violation of the Americans with Disabilities Act against defendant Swingle in his official

2   capacity.  See ECF Nos. 24 (Findings and Recommendations), 32 (Order adopting Findings and

3   Recommendations).  In this claim, plaintiff alleged that Swingle violated the ADA when he

4   refused and/or failed to secure proper accommodations for his disabilities.

5          Defendants Lankford, Lee, Mayes, Miranda, Pomazal, Rofling, Schmidt and Swingle filed

6   their answer to the complaint on June 5, 2014, after plaintiff filed the pending motion for a

7   temporary restraining order.  See ECF No. 40 (Answer).

8   II.    Motion for a Temporary Restraining Order

9          In his motion, plaintiff requests an order to force High Desert State Prison officials to

10  schedule the total knee revision surgery called for by the last orthopedic surgeon within 15 days

11  of his transfer to that facility.  ECF No. 39 at 4.  Based on his allegations of prior medical

12  mistreatment at HDSP, plaintiff further requests that the court order HDSP officials to afford him

13  with proper post-operative care and pain management for his knee and that they not take away his

14  wheelchair or other ADA accommodations identified in existing CDCR 7410 forms.  Id. at 16-17.

15  Plaintiff has identified specific doctors who he wants to see within a very specific time frame

16  following his transfer to HDSP.  Id.  Not related to his medical treatment, plaintiff also requests

17  that HDSP staff not take away, withhold or destroy his legal papers or "assault, murder, or maim

18  him in anyway… or otherwise harass, intimidate or retaliate against him… during the rest of his

19  confinement."  Id. at 17.  Absent such an order, plaintiff contends that he will suffer irreparable

20  harm.  Id.

21         All of plaintiff's requests are based on "the demonstrated probability" that CDCR officials

22  are planning on returning plaintiff to HDSP to finish out the last 36 months of his prison sentence.

23  ECF No. 39 at 2.  This "probability" is based on a March 13, 2014 Unit Classification Committee

24  decision to transfer plaintiff to Salinas Valley State Prison's sensitive needs yard with an alternate

25  placement of HDSP's sensitive needs yard, because these are the only institutions that can

26  accommodate all of his medical needs.  See ECF No. 39 at 92-93.  The transfer was deemed non-

27  adverse since it was due to a battery on plaintiff that occurred on March 5, 2013 while housed at

28  the Substance Abuse Treatment Facility.  Id. at 92.

Attached to plaintiff's motion are over 50 pages of medical records that date from 2006 to 2014.  See ECF No. 39 at 29-95.  These records, which the court has reviewed, concern plaintiff's ongoing medical needs as well as numerous evaluations and their results over the years.  Plaintiff has also attached numerous patient-inmate health care appeals that he filed at various prisons concerning his need for a total knee replacement revision surgery.

II.    Legal Standard for Injunctive Relief

Plaintiff seeks a temporary restraining order.[1]  A temporary restraining order is an extraordinary and temporary "fix" that the court may issue without notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  See Fed. R. Civ. P. 65(b)(1)(A).  The purpose of a temporary restraining order is to preserve the status quo pending a fuller hearing.  See generally, Fed. R. Civ. P. 65; see also, L.R. 231(a).  It is the practice of this district to construe a motion for temporary restraining order as a motion for preliminary injunction.  Local Rule 231(a); see also, Aiello v. OneWest Bank, 2010 WL 406092, *1 (E.D.Cal.2010) (providing that "'[t]emporary restraining orders are governed by the same standard applicable to preliminary injunctions'") (citations omitted).

The party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008); Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter).  The propriety of a request for injunctive relief hinges on a significant threat of irreparable injury that must be imminent in nature.  Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).

---

[1] To the extent that this is an ex parte motion for a TRO without notice, the undersigned notes that there are stringent requirements to be imposed under Fed. R. Civ. P. 65 for issuance of such an order, which plaintiff clearly has not met.  Reno Air Racing Ass' n., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006).  Rule 65(b)(1) permits issuance of a TRO without "notice to the adverse party or its attorney, only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury ... will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

1   Alternatively, under the so-called sliding scale approach, as long as the plaintiff

2   demonstrates the requisite likelihood of irreparable harm and can show that an injunction is in the

3   public interest, a preliminary injunction may issue so long as serious questions going to the merits

4   of the case are raised and the balance of hardships tips sharply in plaintiff's favor.  Alliance for

5   Wild Rockies v. Cottrell, 632 F.3d 1127, 1131–36 (9th Cir. 2011) (concluding that the "serious

6   questions" version of the sliding scale test for preliminary injunctions remains viable after

7   Winter).

8   The principal purpose of preliminary injunctive relief is to preserve the court's power to

9   render a meaningful decision after a trial on the merits.  See 11A Charles Alan Wright & Arthur

10   R. Miller, Federal Practice and Procedure, § 2947 (2d ed. 2010).  As noted above, in addition to

11   demonstrating that he will suffer irreparable harm if the court fails to grant the preliminary

12   injunction, plaintiff must show a "fair chance of success on the merits" of his claim.  Sports

13   Form, Inc. v. United Press International, Inc., 686 F.2d 750, 754 (9th Cir. 1982) (internal citation

14   omitted).  Implicit in this required showing is that the relief awarded is only temporary and there

15   will be a full hearing on the merits of the claims raised in the injunction when the action is

16   brought to trial.  In cases brought by prisoners involving conditions of confinement, any

17   preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the

18   harm the court finds requires preliminary relief, and be the least intrusive means necessary to

19   correct the harm."  18 U.S.C. § 3626(a)(2).

20   Finally, as a general rule this court is unable to issue an order against individuals who are

21   not parties to a suit pending before it.  Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S.

22   100 (1969).

23   III.   Analysis

24   A.   Likelihood of Success on the Merits

25   The court is unable to determine the likelihood of success on the merits at this early stage

26   of the case.  Just prior to plaintiff's filing of the instant motion, defendants filed an answer to the

27   first amended complaint.  Furthermore, a discovery and scheduling order has just been issued by

28   the court.  ECF No. 44.  In this instance, there is an inadequate showing of a likelihood of success

4

1    on the merits to support the "drastic remedy" of a preliminary injunction.  Munaf v. Geren, 553

2    U.S. 674, 689–90 (2008).

3            B.      Likelihood of Irreparable Harm

4            Plaintiff's motion fails to establish the likelihood that he will be subject to irreparable

5    harm absent the issuance of an order compelling HDSP prison officials to perform knee revision

6    surgery because it is not even clear that plaintiff will be transferred back to HDSP.  While

7    plaintiff's medical conditions are certainly serious, the actual likelihood that plaintiff will be

8    transferred to HDSP is not at all clear in light of the UCC's designation of HDSP as an alternate

9    transfer institution.  ECF No. 39 at 92-93.  Plaintiff's claim that his transfer to HDSP is a

10   "probability" is both speculative and conclusory since the recommendation was made in March

11   2014 and as of today's date plaintiff has yet to be transferred.  See

12   http://inmatelocator.cdcr.ca.gov/  (searchable by plaintiff's name).  The documents attached to

13   plaintiff's motion indicate that the UCC decided to transfer plaintiff to Salinas Valley State

14   Prison, which is located in the Northern District of California and is therefore not subject to an

15   injunction issued by this court.  In light of the speculative nature of the prison transfer, plaintiff

16   has failed to establish the likelihood of irreparable harm.

17           C.      Balance of the Equities

18           Here there is nothing to tip the balance of equities in plaintiff's favor.  Federal courts must

19   remember that the duty to protect inmates' constitutional rights does not confer the power to

20   manage prisons or the capacity to second-guess prison administrators, for which we are ill-

21   equipped."  Bruce v. Ylst, 351 F.3d 1283, 1290 (9th Cir. 2003); see also Turner v. Safley, 482

22   U.S. 78, 84-85 (1987) ("Prison administration is ... a task that has been committed to the

23   responsibility of ... [the legislative and executive] branches, and separation of powers concerns

24   counsel a policy of judicial restraint.").  In the healthcare context, this court is wary of stepping in

25   and substituting its judgment for that of medical professionals within the prison system especially

26   when plaintiff's request requires determining medical urgency.  Absent the existence of

27   exceptional circumstances not present here, the court will not intervene in the day-to-day

28   management of prisons.  See e.g., Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (prison officials

                                                      5

1 entitled to substantial deference); <u>Sandin v. Conner</u>, 515 U.S. 472, 482-83 (1995) (disapproving

2 the involvement of federal courts in the day-to-day-management of prisons.)

3      D.    <u>Public Interest</u>

4      It is unclear what public interest could be served by intervening in a prison's health care

5 decision making.  Therefore, this factor does not tip the balance in favor of a temporary

6 restraining order.

7 IV.    <u>Conclusion</u>

8      Plaintiff has failed to establish a likelihood of success on the merits, a likelihood that he

9 will suffer irreparable harm in the absence of preliminary injunctive relief, that the balance of

10 equities tips in his favor, or that the injunction is in the public interest.

11      Accordingly, IT IS RECOMMENDED that plaintiff's motion for immediate injunctive

12 relief (ECF No. 39) be denied.

13      These findings and recommendations are submitted to the United States District Judge

14 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days

15 after being served with these findings and recommendations, any party may file written

16 objections with the court and serve a copy on all parties.  Such a document should be captioned

17 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

18 shall be served and filed within fourteen days after service of the objections.  The parties are

19 advised that failure to file objections within the specified time may waive the right to appeal the

20 District Courts order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

21 DATED: June 16, 2014

22                            _Allison Claire_____

23                            ALLISON CLAIRE
                           UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28