UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER HOWARD WHITE, | No. 2:12-cv-2868 MCE AC P |
| Plaintiff, | |
| v. | ORDER |
| SMYERS, et al., | |
| Defendants. | |

I.   Introduction

Plaintiff is a state prisoner, currently incarcerated at California State Prison-Richard J. Donovan (CSP-RJD) in San Diego, who proceeds pro se and in forma pauperis with this prisoner civil rights action alleging deliberate indifference to his serious medical needs. Currently pending is plaintiff's "Emergency Request for Protective Order and a Restraining Order," ECF No. 205,[1] in which plaintiff "respectfully requests both a protective order and a restraining order to stop the Government from illegally interfering with Plaintiff's access to the Court in this action," id. at 15. Stated differently, plaintiff seeks an order "against the Government from disallowing the Deputy Attorney General (or the Attorney General's Office) or the Department of Corrections to thwart, impede, or otherwise disrupt Plaintiff's pro se litigation efforts in this action." Id. at 1.

---

[1] This is plaintiff's fourth request for emergency injunctive relief in this case. See ECF Nos. 6, 39, 174.

1

At the direction of the assigned magistrate judge, Deputy Attorney General Kelli Hammond, who represents most of the defendants in this action, has filed a response to plaintiff's motion.[2]  See ECF No. 209.

In light of plaintiff's imminent release to parole, referral to the magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c) is withdrawn for purposes of the instant motion only.

## II. Plaintiff's Allegations

Plaintiff commenced this action in 2012, while imprisoned at High Desert State Prison. Plaintiff now avers that he is nearing completion of his 19-year sentence and scheduled to be paroled on January 5, 2017.  Plaintiff states that, as a result of his own efforts, he was initially accepted for parole placement at the Bible Tabernacle re-entry program in Los Angeles.  Plaintiff avers that he has no family in California and no resources and thus "wrote to multiple reentry organizations throughout California to inquire if they would accept me into their program to help me help myself get on my feet."  ECF No. 205 at 6.  On March 31, 2016, Bible Tabernacle offered plaintiff admission into its program.  Id., see also Ex. 3.  In the event CDCR denied plaintiff's request for placement at Bible Tabernacle, he asked that CDCR alternatively place him "at a CDCR-funded housing program" pursuant to 15 Cal. Code Regs. § 3521 et seq.  Id. at 6.

In June 2016, plaintiff was provisionally approved for placement at Bible Tabernacle, without any conditions related to drug or alcohol treatment.  Id. at 6-8.  However, in November 2016, plaintiff was informed by Ms. Dana Morris with RJD Parole Services that he was being considered for placement at Wellspace, in Sacramento, because it is a "medical facility" that could address plaintiff's spine and knee problems.  Id. at 8.  Plaintiff alleges that he was not then

---

[2]  The court has repeatedly tasked Ms. Hammond with extraordinary matters in this case.  Ms. Hammond was tasked with facilitating the delivery of plaintiff's legal materials upon his transfer to CSP-RJD, and with scheduling the conclusion of plaintiff's deposition in coordination with the other defense counsel and the CSP-RJD Litigation Coordinator (see ECF No. 196); and was required to provide plaintiff with copies of exhibits submitted during the course of plaintiff's deposition (see ECF No. 203).  Ms. Hammond's responses, including her instant response which required preparation over the holidays, have routinely been timely, thorough and essential to the court's resolution of the matters at hand.

2

informed that Wellspace was a drug and alcohol treatment center.  Id.  Moreover, plaintiff avers that on November 30, 2016, Ms. Morris "coerced" plaintiff into signing a "confidential psych/medical information for 'Westcare,' not 'Wellspace,' (though possibly the same), not telling me that such consent was for a drug/alcohol treatment and admission and that such admission was being illegally mandated by parole agent Lewis Haws and approved by his supervisor, Ms. S. Wieling."  Id.

Plaintiff avers he thereafter discovered that Westcare contracts with CDCR as a "regional Substance Abuse Services Coordination Agency (SASCA) for Parole Region I in California" to provide "treatment facilities for parolees with drug-related convictions."  Id. at 8-9 (citation omitted).   On December 4, 2016, plaintiff submitted a CDCR Form 22 to parole agents Haws and Wieling, contending Westcare is not a "CDCR-funded housing" program within the meaning of § 3521.  Id. at 9-10.  Moreover, asserted plaintiff, the Sacramento location would deprive his family of meeting him after his release and transporting him to a Southern California facility before returning to their home out of state.  On December 5, 2016, Correctional Counselor Centeno provided plaintiff with a copy of a one-page "Parole, Planning, and Placement – In-Custody Direct Placement – Initial Referral."  Id. at 10-11, Ex. 22.  This document provides, inter alia, that plaintiff's "drug of choice" is "alcohol/meth."  Plaintiff avers he was informed that Ms. Hammond had been instrumental in obtaining plaintiff's placement at Wellspace/Westcare.

Thereafter on December 5, 2016, plaintiff informed Wellspace and Ms. Morris (and on December 6 informed Correctional Counselor Centeno) that he withdrew his consent to the Wellspace/Westcare placement, and that he had commenced a hunger strike until his demand for a Southern California placement premised on his physical disabilities was met.  Id. at 9-11.  When he dated and signed the pending motion on December 11, 2016, plaintiff averred that he remained on a hunger strike and "intend[s] to remain on the strike pending necessary resolve by the Court or the Attorney General's Office" (sic).  Id. at 11.

Plaintiff contends before this court that Ms. Hammond "is involved in conspiratorial misdeeds with the [CDCR] to fraudulently have Plaintiff placed and admitted at a drug/alcohol treatment facility for the sole purpose to illegally seize, withhold, or discard Plaintiff's case file

3

1 and legal materials to this case and, moreover, to thwart, impede or otherwise disrupt Plaintiff's
2 pro se litigation efforts." Id. at 1. Plaintiff contends that his "illegal admittance into a
3 drug/alcohol treatment facility . . . will create Plaintiff's inability to continue litigating this case
4 himself pro se, and certainly thwart his intended efforts to have a firm pick this case up and
5 represent the Plaintiff professionally before the Court. Plaintiff will have all of his legal materials
6 and case file papers illegally seized, lost or discarded, or withheld. Plaintiff will be prevented
7 from further litigation. The Court should not allow the Government to violate Plaintiff's right of
8 court access." Id. at 14.

### III. Response by DAG Hammond

Ms. Hammond's response includes her own declaration and the declaration of D. Morris, CSP-RJD Parole Service Associate. See ECF No. 209, Ex. A (Morris Decl.) and Ex. B (Hammond Decl.). Ms. Hammond avers that, before tasked on December 19, 2016 with responding to plaintiff's pending motion, she "had not contacted, nor spoken with, anyone at CDCR or the Board of Parole Hearings, the Board of Prison Terms, or any of the Parole Offices regarding Plaintiff Walter White's parole. I have had no input into Plaintiff's parole placement, nor have I had any involvement in CDCR's parole decisions with regard to inmate White, or any other inmate." ECF No. 209 at 13 (Hammond Decl., ¶ 7.)

The declaration of Ms. Morris, signed December 29, 2016, provides that she has been a Parole Service Associate at CSP-RJD for ten years, with responsibility for preparing inmates for parole. She explains in pertinent part, ECF No. 209 at 7-10 (Morris Decl., ¶¶ 2-16):

> ¶ 2. . . . Following the inmate interview, I prepare a case plan, and attempt to find CDCR-contract residential program placement for offenders who specifically ask for assistance. For inmates who request a program placement, I attempt to find an appropriate contract residential program in the inmate's county of last legal residence (CLLR). If no programs are available in the CLLR, I will attempt to find an appropriate program in a neighboring county. However, admission to a CDCR contract residential program is not guaranteed to all pre-paroling inmates, due in large part to waiting lists, and the offender's failure to meet a program's admission criteria.
>
> ¶ 3. Inmate Water White [CDCR #] is due to be released on parole from RJ Donovan on January 5, 2017. I have been assisting inmate White with his parole plans, and his parole placement upon his

release.

¶ 4. Due to inmate White's Americans with Disabilities Act (ADA) designation, and his Enhanced Outpatient (EOP) level of mental health, not all parole placement programs are able to accommodate his needs.

¶ 5. There are several types of placement programs available, but due to White's ADA and mental health designations, not all are available or appropriate for him.

¶ 6. The first is a Residential Multi-Service center (RMSC) placement. This type of placement provides substance use disorder treatment, housing, sustenance, and life skills. . . .

¶ 7. The second type of placement is the Parolee Service Center (PSC). Each PSC is a voluntary program that provides residency and support services to parolees . . . .

¶ 8. Finally, there is a Specialized Treatment of Optimized Programming (STOP) placement. STOP contractors provide comprehensive, evidence-based programming and services to parolees . . .

¶ 9. An inmate can also volunteer for placement upon parole into the Integrated Services for Mentally Ill Parolee (ISMIP) Program. . . .

¶ 10. Inmate White's parole agent in Eureka, Agent Haws, found a STOP, Wellspace, that could accommodate inmate White and which was willing to accept him upon his release to parole. Inmate White agreed to the placement, and I prepared the applicable paperwork.

¶ 11. At the time I approached inmate White with the paperwork, he had a brochure on the facility and its services.

¶ 12. A few days later, inmate White refused the placement, and claimed that I had coerced him [into] signing a consent to release.

¶ 13. I did not coerce inmate White into signing a consent to release, nor did I lie to inmate White about the type of treatment that Wellspace provides. Nor did I arrange for his placement at the Wellspace facility.

¶ 14. Since December 5, 2016, I have been diligently working to find a suitable placement for inmate White. To that end, I sent an e-mail to the RMSC's and PSC's in both the Northern and Southern California regions asking for available ADA space at any facility that could offer the support services needed by inmate White.

¶ 15. Late last week, I received notification from Angela Kent, the Parole Agent III over Adult Programming, advising that there was room available for inmate White at the RMSC in Yolo County. I have received an acceptance letter from the facility confirming that

1 | inmate White can be accommodated at their facility.

2 | ¶ 16.   At this time, I am awaiting a transfer of inmate White's parole from Eureka, California to Yolo County, California.  Once the transfer is processed, inmate White will be transported to Yolo County for housing at the RMSC.

### IV.   Legal Standards for Emergency Injunctive Relief

Injunctive relief "is an extraordinary remedy, never awarded as of right."  Winter v. Natural Resources Defense Council, 555 U.S. 7, 24 (2008).  The principal purpose of preliminary injunctive relief is to preserve the court's power to render a meaningful decision on the merits of the case, see 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2947 (2d ed. 2010), that is, to preserve the status quo pending a determination on the merits, Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1023 (9th Cir. 2009).

The standards governing the issuance of temporary restraining orders are "substantially identical" to those governing the issuance of preliminary injunctions.  Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001); Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009).  Preliminary injunctive relief pursuant to Federal Rule of Civil Procedure 65 is appropriate when the movant demonstrates that "he is likely to succeed on the merits [of the underlying action], that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter at 20;  see also Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter).

The merits of a request for injunctive relief hinge on a significant threat of irreparable injury that must be imminent in nature.  Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).  Speculative injury does not constitute irreparable harm.  See id.; Goldie's Bookstore, Inc. v. Superior Court, 739 F.2d 466, 472 (9th Cir. 1984).  A presently existing actual threat must be shown, although the injury need not be certain to occur.  Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 130-31 (1969); FDIC v. Garner, 125 F.3d 1272, 1279-80 (9th Cir. 1997), cert. denied, 523 U.S. 1020 (1998).  An injunction against individuals not parties to the action is strongly disfavored.  Zenith Radio, 395 U.S. at 112.

In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). "[I]n the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995) (citation and internal quotation marks omitted).

V.   Analysis

Plaintiff has submitted no evidence to support his assertion that Ms. Hammond has attempted to influence his parole placement or conditions. The only substantial evidence of record is Ms. Hammond's sworn declaration that she has not been involved in the process or decision. Ms. Morris' declaration substantiates the non-involvement of Ms. Hammond.

Further, plaintiff has submitted no evidence to support his assertion that his parole placement, particularly if dedicated to substance abuse treatment, will result in the confiscation or loss of his legal materials, adversely impact his ability to retain legal counsel, or impair his ability to obtain needed medical care. These allegations are only speculative.

Plaintiff does not assert a cognizable challenge to his parole placement decision. Although plaintiff is correct that federal law recognizes a liberty interest in parole, as plaintiff acknowledges, see ECF No. 205 at 13-4, this interest is limited to certain procedural requirements in reaching the decision whether to grant parole, see Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1 (1979), or to revoke parole, see Morrissey v. Brewer, 408 U.S. 471 (1972). A state prisoner's parole placement and conditions thereto are matters solely within the discretion of each state. In California, the courts recognize that the state Legislature has given CDCR "exclusive jurisdiction and full discretion to determine a parolee's placement." Susanville v. CDCR (2012) 204 Cal. App. 4th 377, 382 (citing, inter alia, Cal. Pen. Code § 3003 (setting forth criteria for community placement)); and In re Roberts (2005) 36 Cal. 4th 575, 588 ("[t]he executive branch has 'inherent and primary authority' over parole matters")). "The Legislature has given the CDCR and its DAPO [Division of Adult Parole Operations] expansive authority to establish and

1 enforce rules and regulations governing parole, and to impose any parole conditions deemed
2 proper.  These conditions must be reasonable, since parolees retain constitutional protection
3 against arbitrary and oppressive official action.  Nevertheless, the conditions may govern a
4 parolee's residence, his associates or living companions, his travel, his use of intoxicants, and
5 other aspects of his life."  In re E.J. (2010) 47 Cal. 4th 1258, 1283 (citations and internal
6 quotation marks omitted); see also Cal. Pen. Code § 3067 (terms and conditions of parole).

7      Thus, plaintiff "has no liberty interest in rehabilitative programs or community placement.
8 . . . Defendants' alleged failure to comply with a state policy or rule does not itself rise to the
9 level of a constitutional violation."  Norris v. Straub,  2005 WL 3479849, at *3-4, 2005 U.S. Dist.
10 LEXIS 38540, *9-10  (W.D. Mich. Dec. 20, 2005) (Case No. 1:05-CV-771).  "[T]he denial of
11 participation in a community placement program is not the type of atypical and significant
12 deprivation in which a state might create a liberty interest."  Davis v. Loucks, 113 F.3d 1234 (6th
13 Cir. 1997) (unpub.) (citing Sandin v. Conner, 115 S. Ct. 2293, 2300 (1995)).

14      Pursuant to these authorities, the court finds that plaintiff has failed to state a cognizable
15 claim for injunctive relief concerning his parole placement or conditions.

16      Moreover, plaintiff's efforts fail under the traditional standards for injunctive relief.
17 Plaintiff has submitted no evidence – only bare and conclusory allegations – that his parole
18 placement may interfere with his ability to pursue this action.  Thus, plaintiff has not
19 demonstrated a "presently existing actual threat" of imminent harm; the alleged harm is both
20 speculative and nonspecific.  Additionally, plaintiff's requested court action is not directed to any
21 party in this action.  Thus, plaintiff has not demonstrated that his requested relief is necessary to
22 preserve the court's power to render a meaningful decision on the merits of this case.

23      For these reasons, this court finds no ground upon which to grant plaintiff's requested
24 relief.
25 ///
26 ///
27 ///
28 ///

VI. <u>Conclusion</u>

Accordingly, plaintiff's motion for emergency injunctive relief, ECF No. 205, is hereby DENIED.

DATED: January 3, 2017

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE